IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**Fernando Gonzalez-Perez,**

Plaintiff,

v.                                              Civil No. 07-1757 (GAG)(JA)

**Pedro Toledo Davila, et als,**

Defendant.

**OPINION AND ORDER**

Plaintiff Fernando Gonzalez-Perez ("Gonzalez") filed this suit alleging violations of his constitutional rights stemming from his arrest. He brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 alleging a claim of excessive use of force, as well as state law claims under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141. Defendants Pedro Toledo-Davila ("Toledo") and Jose Brillon-Colon ("Brillon") timely moved for summary judgment arguing plaintiff's failure to state a claim, qualified immunity, and inapplicability of the Fourth Amendment and the doctrine of supervisory liability. After a thorough review of all the pleadings and pertinent law, the court **GRANTS** in part and **DENIES** in part defendants' motion for summary judgment. (Docket No. 53)

**I.     Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if it may reasonably be resolved in favor of either party at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Relevant Material Facts and Procedural Background**

Consistent with the summary judgment standard, the court states the facts in the light most favorable to the plaintiff. See Iverson, 452 F.3d at 98. Additionally, in accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations. See Local Rule 56(e). The court has disregarded all argument, conclusory allegations, speculation, and improbable inferences disguised as facts. See Forestier Fradera, 440 F.3d at 21; Medina-Muñoz v. R.J. Reynolds Tabacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

On August 22, 2006, in the parking lot of the establishment known as "The Sweet House", located at Marginal Los Ángeles, in Carolina, Puerto Rico, defendant police officers arrived around 7:00 a.m. in response to a 9-1-1 call regarding domestic violence between the plaintiff and his consensual partner. (Docket Nos. 56-2 & 56-6). Plaintiff alleges that these police officers beat, battered, and abused him in violation of his constitutional rights while acting under color of state law, discriminating against him because of his origin and race as a twenty eight year-old Dominican national. (Docket No. 1). Plaintiff contends that said defendants struck him with their night sticks before and after being arrested. Id. The Puerto Rico Police Department presents an Administrative

**Civil No. 07-1757 (GAG)(JA)**              3

Investigation Report stating that defendant police officers complied with the Puerto Rico Police Department regulations while using a nightstick to repel plaintiff who was kicking and hitting them, causing only a trauma in the tibia of his left leg. (See Docket No. 56-6). However, the police report also mentions that paramedics found the plaintiff to be suffering from abdominal pain and a trauma in his mouth. Id. Plaintiff was taken to the Dr. Federico Trilla University Hospital of Carolina and was also recommended to go to the Rio Piedras Medical Center. Id. Furthermore, at the time of the incident, General Order 98-6, issued by Superintendent of Police Toledo, was in effect, instructing all members of the Puerto Rico Police Department about the adequate use and handling of a nightstick. (See Docket No. 53-4).

Although Brillon and Toledo both signed a *Statement under Penalty of Perjury Pursuant to 28 U.S.C. § 1746* (Docket No. 53-5) stating that they had no knowledge of the present case, the police administrative report ( Docket No. 56-6) and a letter directed to plaintiff by Toledo (Docket No. 56-2) indicate otherwise. According to the report, at the time of this incident, Sergeant Brillon was the supervisor on duty and consulted the present case with the Carolina District Attorney. (Docket No. 56-6). Additionally, discovery already conducted evidences that one of the arresting officers had been previously recommended by the Legal Division of the Police Department for a medical evaluation (Docket No. 56-4) because of possible civil rights violations based on his history of conduct (Docket No. 56-3). However, the Police Department lacks any record of this evaluation taking place and Sergeant Nidyvette Lugo-Beauchamp ("Lugo") of the Public Integrity Superintendence did not know whether the evaluation was ever performed. (Docket No. 56-4). Furthermore, Lugo mentions in her deposition that defendant Toledo met at least once a week with the Director of the Public Integrity Division, who is in charge of investigating complaints received and made against police officers such as those involving misuse or abuse of authority. See id.

Plaintiff filed the original complaint in this case on August 22, 2007, stating causes of action under 42 U.S.C. §§ 1981, 1983, and Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141 (2007), alleging excessive use of force by the Commonwealth Police and the deprivation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (Docket No. 1). Plaintiff sued thirteen police officers of unknown name, identified

as John Doe 1-7, x, y, z, x2, y2, and z2, as well as a lieutenant police officer, John Doe 8. Id. In addition to these claims, plaintiff also alleged a parallel claim against defendants Toledo, Superintendent of the Puerto Rico Police Department, and Brillon, a Sergeant of the Puerto Rico Police Department, in their official supervisory capacities. Id. The court granted in part defendants Toledo and Brillon's motion to dismiss plaintiff's Fifth Amendment claims (Docket No. 13) for lack of federal action. (Docket No. 14). Subsequently, the rest of the defendants moved to dismiss for failure to properly serve the summons (Docket No. 16) and the court granted their motion. (Docket No. 17). Finally, among other procedural events, the remaining defendants, Toledo and Brillon, called for a judgment on the pleadings (Docket No. 34), which was denied (Docket No. 37).

On April 1, 2009, defendants Toledo and Brillon filed the present motion for summary judgment (Docket No. 53) as to all claims against them, including a qualified immunity defense. On May 13, 2009, plaintiff filed both an opposition in response to defendants' motion for summary judgment as well as a counterstatement to defendants' statement of uncontested facts. (Docket No. 57). The court now considers defendants' arguments to determine whether defendants have established that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

**III. Discussion**

**A. § 1983 Claim**

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983. Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Under Section 1983, the plaintiff must allege the following: (1) that he was deprived of a federal right; and (2) that the person who deprived him of that right acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). In order to satisfy the first element, plaintiffs must show that the defendant's conduct was the cause in fact of the alleged deprivation. Rodriguez Cirio v.

Garcia, 115 F.3d 50, 52 (1st Cir. 1997). A defendant in a Section 1983 action has acted under color of state law if he has abused power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941). Furthermore, "defendants are not removed from the purview of Section 1983 simply because they are professionals acting in accordance with professional discretion and judgment." West, 487 U.S. at 52.

Plaintiff alleges a cause of action under section 1983 for lack of probable cause for his arrest and the use of excessive force by the arresting officers. The Fourteenth Amendment creates various rights enforceable under section 1983, such as the Fourth Amendment protection against unreasonable searches and seizures, at issue in this case. Section 1983 is not a source of substantive rights, but rather provides "a method for vindicating federal rights elsewhere conferred" not "governed by a single generic standard." Graham v. Connor, 490 U.S. 386, 393-94 (1989). In addressing an excessive force claim, the specific constitutional right at issue must first be identified. Id. at 394. The claim is then judged "by reference to the specific constitutional standard which governs that right, rather than to some generalized excessive force standard." Id. All claims of excessive force, deadly or not, by police officers during the course of an arrest should be analyzed under the Fourth Amendment's reasonableness standard, instead of a substantive due process standard, since it provides an "explicit source of constitutional protection against this sort of physically intrusive governmental conduct." Id. at 395.

In this case, even if the court accepts defendants' argument that the arresting officers had probable cause to arrest plaintiff, there is an issue of material fact as to the amount of force employed to effectuate the arrest, which is material to the determination of reasonableness. Therefore, the court **DENIES** defendants' motion for summary judgment for failure to state a claim under Section 1983.

**B.     Supervisory Liability**

Plaintiff also alleges that defendant Toledo's failure to train, supervise, and discipline the defendant police officers amounts to a deliberate and willful indifference to his federally protected Fourth Amendment rights which directly caused his damages. The violation of a plaintiff's

**Civil No. 07-1757 (GAG)(JA)**                     6

constitutional rights caused by a local government's failure to train police officers can be actionable under a section 1983 Fourth Amendment claim where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and where "the identified deficiency in a city's training program [is] closely related to the ultimate injury." Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 412 (1989)). In order for a deficient training program to amount to deliberate indifference, the training must be more than merely imperfect and it must be shown that defendant "disregarded a known or obvious risk of serious harm from its failure to develop a training program" that meets adequate standards. Id. at 27-28. Since a generalized showing of a training program's deficiency is insufficient, therefore, the plaintiff must show that the officers that committed the violation were not given adequate training, leading to his injuries. Whitfield v. Melendez-Rivera, 431 F.3d 1, 10 (1st Cir. 2005) (referencing Young, 404 F.3d at 26).

In the present case, Toledo, as the Superintendent of the Puerto Rico Police Department, acts on behalf of the State in undertaking duties pertaining to the hiring, training, evaluation, supervision, and discipline of defendants. Burgos-Hernandez v. Puerto Rico, Slip Op., 2008 WL 4191248 (D.P.R.) (2008). However, given the unrebuked evidence of training regulations, plaintiff fails to meet the burden of establishing a material factual issue regarding either that Toledo failed to train defendants or that the training received by defendants was inferior by professional standards. Without any independent evidence of an inferior training program, it cannot be concluded that there was inadequate training. Also, plaintiff's evidence does not contradict that Toledo trained officials according to the law and General Order 98-6, providing guidance concerning the use of force. Furthermore, plaintiff's allegation that defendants failed to comply with General Order 98-6 is insufficient to deem such an order inadequate, when such order clearly establishes proper methods. Therefore, the court **GRANTS** Toledo's motion for summary judgment on the Fourth Amendment claim for failure to train; however, there are unresolved material issues regarding the proper supervision of officials as to which a jury could find for either party.

Under Section 1983, supervisory liability may not be based on the doctrine of *respondeat superior,* See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n.58 (1978), but only on the

supervisor's own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or "where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was '*affirmatively link[ed]*' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence [. . .] amounting to deliberate indifference.' " Whitfield, 431 F.3d at 14.  Supervisory liability requires that: (1) the supervisor either acquiesced in or was deliberately indifferent to the subordinates' unconstitutional conduct; and (2) that the supervisor's action or inaction was "affirmatively linked" to the deprivation of the plaintiff's federal rights. Rizzo v. Goode, 423 U.S. 362, 371 (1976).  A supervisor's action or inaction amounting to deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989).  "The affirmative link requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995) (internal citations and quotations omitted).

A supervisor's failure to identify and take remedial action concerning an officer with disciplinary problems can create supervisory liability pursuant to section 1983. Gutierrez-Rodriguez, 882 F.2d at 562-66; Martinez Correa v. Lopez Feliciano, 759 F.Supp. 947, 955-57 (D.P.R. 1991). In determining whether a supervisor is liable, his knowledge regarding the subordinate's behavior is considered. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 93 (1st Cir. 1994).  Moreover, a supervisor without actual knowledge may be liable if he would have known of injurious conduct but for his "willful blindness" or deliberate indifference. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

In this case, plaintiff has met the burden of production by presenting specific evidence indicating genuine material issues of fact sufficient to preclude summary judgment for defendants. One of the officers that intervened with plaintiff's Fourth Amendment rights had five previous administrative complaints involving verbal abuse, domestic violence, and insubordination.  This officer was referred by the Legal Affairs Department of the Police for a medical evaluation before the events giving rise to this complaint took place.  However, the undisputed facts show that this

**Civil No. 07-1757 (GAG)(JA)**                8

evaluation never took place. Furthermore, there is a dispute as to whether Toledo knew or should have known about the arresting officer's recommendation for a medical evaluation, given his weekly meetings with the Director of Public Integrity. Additionally, Toledo signed an *Unsworn Statement under Penalty of Perjury Pursuant to 28 U.S.C. § 1746* (Docket No. 53) mentioning that he had "no personal knowledge of the facts" in this case, yet he also signed a letter directed to plaintiff indicating that he knew of the events giving rise to this claim. Plaintiff also alleges that through administrative complaints and the referral for a medical evaluation, Brillon, as immediate supervisor, knew of defendant's violent predispositions. It is up to the jury to decide whether this evidence supports plaintiff's contention over Brillon's denial of such knowledge. In light of these disputes of material facts, the court **DENIES** defendants' motion for summary judgment on plaintiff's supervisory liability claims.

### D. Qualified Immunity Defense

As a defense to section 1983 claims, defendants may raise qualified immunity. Behrens v. Pelletier, 516 U.S. 299, 312 (1996). The defense of qualified immunity protects an official who violated the plaintiff's federally protected right as long as the official did not violate clearly established federal law at the time he acted. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Camilo-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998). The qualified immunity defense applies to Fourth Amendment challenges under the objective reasonableness standard to arrests and searches. Anderson v. Creighton, 483 U.S. 635, 643-45 (1987). Conduct unreasonable under the Fourth Amendment could still be objectively reasonable for purposes of qualified immunity. Harlow, 475 U.S. at 344-45. The court conducts a three-part inquiry and considers: (1) whether the plaintiff's allegations, if true, establish a constitutional violation; (2) if so, whether the right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated that right. Whalen v. Mass. Trial Court, 397 F.3d 19, 23 (1st Cir. 2005). The "clearly established" prong of the qualified immunity defense for a supervisor is satisfied "when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." Camilo-Robles v. Hoyos,

**Civil No. 07-1757 (GAG)(JA)**                              9

151 F.3d 1, 6 (1998). Furthermore, since qualified immunity is an affirmative defense, the defendant has the burden to present evidence that his actions were objectively reasonable under the circumstances. See id. at 345.

In this case, if plaintiff's allegations are true, the defendants' conduct would violate the Fourth Amendment. However, summary judgment on the defense of qualified immunity is improper since there is a dispute of material facts regarding the objective reasonableness of both supervisors' conduct, in light of their potential awareness of events regarding the claim at hand. The court, therefore, cannot at this stage determine whether defendants are eligible to receive qualified immunity and **DENIES** summary judgment on this ground.

### E. Article 1802 of the Civil Code of Puerto Rico

"Article 1802 of Puerto Rico's Civil Code imposes liability on any person or entity who by an act or omission causes damage to another through fault or negligence." De Jesus Adorno v. Browning Ferris Industries of Puerto Rico, 160 F.3d 839, 842 (1st Cir. 1998). "An actor is at fault, or [is] negligent, when he fails to exercise due diligence to prevent foreseeable injury." Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir. 1991). "Under Puerto Rico law, legal duty arises: (1) by statute, regulation, ordinance, by law or contract; (2) as a result of [a] special relationship between the parties that has arisen through custom; or (3) as a result of [a] traditionally recognized duty of care particular to the situation." De Jesus Adorno, 160 F.3d at 842.

In this case, plaintiff seeks to recover moral and special damages under Art. 1802 of the Puerto Rico Civil Code for defendants' Fourth Amendment violations. The court has already decided, *supra*, that defendants are not entitled to summary judgment with respect to plaintiff's supervisory liability claims. As a result, the court is not in a position to dismiss any pendent state law claims at this moment, and therefore, **DENIES** summary judgment in favor of defendants.

### IV. Conclusion

For the aforementioned reasons, the court **GRANTS** in part and **DENIES** in part defendants' motion for summary judgment. The court **GRANTS** defendants' motion for summary judgment for plaintiff's claim under Supervisory Liability for failure to train. The court **DENIES** defendants' motion for summary judgment as to all remaining claims.

**Civil No. 07-1757 (GAG)(JA)**    10

**SO ORDERED.**

In San Juan, Puerto Rico this 8th day of June, 2009.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge