IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FERNANDO GONZÁLEZ-PÉREZ,

Plaintiff

v.

PEDRO TOLEDO-DÁVILA,
Superintendent of the Puerto Rico
Police Department; JOSÉ BRILLÓN-
COLÓN, Sergeant Officer;
ELIZABETH DOE; CONJUGAL
PARTNERSHIP BRILLÓN-DOE,

Defendants

CIVIL 07-1757 (JA)

OPINION AND ORDER

This is a case brought under 42 U.S.C. § 1983, the Civil Rights Act of 1971. Plaintiff Fernando González-Pérez, alleges that the defendant Pedro Toledo-Dávila, former Superintendent of the Puerto Rico Police Department, is liable as a supervisor for the actions of several police officers who arrested him without probable cause and using excessive force, which action resulted in a violation of his constitutional rights. Specifically, plaintiff's tibia was fractured, his small intestine was perforated and two of his teeth were broken. The leg injury required major surgery and the abdominal surgery left an ugly scar from the navel to the sternum. The case was tried to a jury on April 26, 27 and 28, 2010, and at the

CIVIL 07-1757 (JA)                                2

close of plaintiff's evidence, the defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50.[1]

## I.  FACTUAL BACKGROUND

The evidence in the light most favorable to plaintiff reflects that in the early morning hours of August 27, 2006, on the marginal road of the Baldorioty de Castro Avenue in Isla Verde Puerto Rico, plaintiff, who had been drinking, was having a discussion with his girlfriend, with whom he lived at the time.  Plaintiff was standing by the driver's side of an SUV Ford Expedition that his girlfriend was driving and entered the vehicle through the driver's window.  Once inside the SUV, plaintiff pulled his girlfriend's hair and tried to bite her, while at the same time causing the passenger to exit the vehicle.  Four or five policemen that were nearby approached the vehicle, instructed plaintiff to exit the vehicle and proceeded to subdue him with night sticks, first while he was standing and then while he was on his knees, breaking the large bone of the left lower leg in the process and pummeling his abdomen.  The officers handcuffed plaintiff and carried him into the back seat of the patrol car, but not before an officer broke two of

---

[1] Rule 50 provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:  (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1)(A)(B).

CIVIL 07-1757 (JA)                              3

plaintiff's teeth with a billy club.  (See Exhibit 3a.)  Plaintiff underwent surgery, an intra medullary nailing to correct his tibial fracture, as well as an exploratory laparotomy which resulted in the repair of his perforated jejunum, all of this the result of the life threatening beating he received at the hands of police officers, including officer Miguel Lara-Ramos.

## II.  STANDARD OF REVIEW

A motion for judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. See Richards v. Relentless, Inc., 341 F.3d 35, 41 (1st Cir. 2003); see also Guilloty-Pérez v. Pierluisi, 339 F.3d 43, 50 (1st Cir. 2003); González-Pérez v. Gómez-Águila, 312 F. Supp. 2d 161, 164 (D.P.R. 2004).  The court must "examine the evidence and all fair inferences in the light most favorable to the plaintiff [and] may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence."  Katz v. City Metal Co., 87 F.3d 26, 28 (1st Cir. 1996) (quoting Richmond Steel, Inc. v. P.R. Am. Ins. Co., 954 F.2d 19, 22 (1st Cir. 1992)); cited in González-Pérez v. Gómez-Águila, 312 F. Supp. 2d at 164.  If from the evidence presented at trial, fair minded persons could draw different inferences, then the matter is for the jury to resolve and judgment as a matter of law is not appropriate.  Espada v. Lugo, 312 F.3d 1, 2 (1st Cir. 2002). "But the non-moving party must have presented '"more than a mere scintilla" of

CIVIL 07-1757 (JA)                                    4

evidence' to survive a motion for judgment as a matter of law and cannot rely on 'conjecture or speculation.'" González-Pérez v. Gómez-Águila, 312 F. Supp. 2d at 164 (quoting Katz v. City Metal Co., 87 F.3d at 28 (quoting Richmond Steel, Inc. v. P.R. Am. Ins. Co., 954 F.2d at 22).

### III.  ANALYSIS

A.  Section 1983

The essential elements of a claim under 42 U.S.C. § 1983[2] are (1) that the defendant acted "under color of state law" and (2) that the defendant's conduct worked a denial of rights secured by the Constitution or by federal law. Rodríguez-Vázquez v. Cintrón-Rodríguez, 160 F. Supp. 2d 204, 209 (D.P.R. 2001).

---

[2] Title 42 U.S.C. § 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

CIVIL 07-1757 (JA)                                5

A defendant is considered to act "under color of state law" if his conduct occurs in the course of performing an actual or apparent duty of his office or if his conduct is such that he could not have acted in such a way but for the authority of his office.  Martínez v. Colón, 54 F.3d 980, 986 (1st Cir. 1995).  Whether a police officer acts "under color of state law" depends on the nature and the circumstances within which the officer's conduct takes place and the relationship that conduct has to his official duties.  Id.  Thus, a person acts under color of state law whenever he purports to act in an official capacity or to exercise official responsibilities and effectively "abuses the position given to him by the state".  Id. (quoting West v. Atkins, 487 U.S. 42, 50 (1988)).

As a threshold matter, it is clear that the actions of the police which took place on August 27, 2006, including actions of officer Miguel Lara-Ramos, were pursuant to their official capacities as members of the Puerto Rico Police Department, and that they acted under color of law.  For purposes of the Rule 50 motion, I assume that plaintiff's civil rights were violated by the arresting officers, including officer Miguel Lara-Ramos.

B.  Supervisory Liability

"Under section 1983, a supervisory official may be held liable for his subordinates' behavior only if (1) his subordinates' behavior results in a constitutional violation; and (2) the official's action or inaction was affirmatively

CIVIL 07-1757 (JA)                              6

linked to that behavior such that 'it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" Colón-Andino v. Toledo-Dávila, 634 F. Supp. 2d 220, 232 (D.P.R. 2009) (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Mangual v. Toledo, 536 F. Supp. 2d 127, 132 (D.P.R. 2008).

"A supervisor's action or inaction amounting to deliberate indifference will be found only if 'it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.'" Tavárez-Guerrero v. Toledo-Dávila, 597 F. Supp. 2d 250, 254 (D.P.R. 2008) (quoting Germany v. Vance, 868 F.2d 9, 18 (1st Cir.1989)). "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Tavárez-Guerrero v. Toledo-Dávila, 597 F. Supp. 2d at 254 (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995)).

Since there is no respondeat superior in section 1983 cases, a supervisor must be found liable for his or her own acts of omissions. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581-82 (1st Cir. 1994) (citations omitted). "Liability is imposed [upon a supervisor, such as the Superintendent of Police, in

CIVIL 07-1757 (JA)                            7

this case, Pedro Toledo-Dávila,] if there is a showing that the 'supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others.'" González-Pérez v. Gómez-Águila, 312 F. Supp. 2d at 166 (quoting Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999) (quoting Gutíerrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989)). Actual knowledge of the offending behavior is not required, only that the supervisor "would have known of it but for his deliberate indifference or willful blindness." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d at 582). "If such showing is made, then the supervisor is responsible for the foreseeable consequences of such conduct if he had the power and authority to alleviate it." González-Pérez v. Gómez-Águila, 312 F. Supp. 2d at 166 (citing Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d at 582).

The witness which was presented as the linchpin between the violation of plaintiff's civil rights by arresting officers and the Superintendent of the Puerto Rico Police Department Pedro Toledo-Dávila was sergeant Nydiavette Lugo-Beauchamp. The sergeant, who appeared under subpoena, is assigned to the Deputy Superintendent's Office of Professional Liability which prior to early 2009 was known as the Deputy Superintendent's Office of Public Integrity. Specifically, the sergeant is in charge of the records filing section, that is all administrative

CIVIL 07-1757 (JA)                           8

files, as opposed to personnel files, of the police force members.  In addition, all administrative investigations and complaints regarding members of the police force would go to her office.

During the trial, sergeant Lugo-Beauchamp identified Exhibit 6 which was a document in the administrative file of officer Miguel Lara-Ramos that contained a list of grievances or complaints against him.  Exhibit 6 was published to the jury.  The sergeant explained what the document numbering system meant.  For example 1996-08-29-0314 on the document refers to the year, then the region where the complaint occurred, then the type of complaint (for example 29 is verbal abuse), and then the cardinal number of the complaint, in this case 0314.

The administrative record which is dated November 12, 2008 reveals the following five complaints:

(1)  A complaint by a municipal judge in 1995 alleging verbal abuse as both the judge and the officer drove their vehicles along an avenue in the metropolitan area.  This incident resulted in a twenty-day suspension from employment and salary.[3]
(2) The complainant alleged verbal abuse in 1998, and the final disposition was that the complaint was dismissed.
(3) A domestic violence complaint dated in 1999, resulting of a final disposition of 30-days suspension from employment and salary.
(4) A 2000 complaint for verbal abuse against a fellow worker for intervening with officer Lara Ramos for driving at an exaggerated speed.  This complaint was pending in the legal affairs office.

---

[3] The penalty described ends with the words "which he commuted".

CIVIL 07-1757 (JA)                                    9

     (5)    A 2001 complaint for insubordination made by two supervisors (made under code 29, for verbal abuse) for disobeying instructions, a matter also pending at the legal affairs office.[4]

Sergeant Lugo-Beauchamp then referred to Exhibit 7, an approved referral for evaluation of agent Miguel Lara-Ramos by the medical office, taking into consideration the agent's conduct history, regardless of the result of the investigated complaints.[5]  Exhibit 7 notes that the medical evaluation measure was recommended in view of what was resolved in <u>Brandon v. Holt</u>, <u>Gutiérrez-Rodríguez v. Cartagena</u>, and <u>Leyva v. Aristud</u> (citations omitted in original)[6] and other cases that impose on the police the taking of precautionary measures to prevent possible violations of civil rights by those members of the police force whose conduct record alerts those who manage the institution, that an affirmative, preventive or corrective action must be taken, in accordance with each particular case.  This referral, dated May 30, 2002, contained the notation OS-4-16-527 and explained that the number 4 referred to the particular secretary who produced the communication.  Sergeant Lugo-Beauchamp was not familiar

---

[4] Of the five complaints only three have been resolved.

[5] The jury read Exhibit 7 in its English version.  Specifically, the letter reflects being a referral for (medical) evaluation.  It is signed by the director of legal affairs, attorney Francisco Catala-Barrera.  On re-direct examination, I sustained an objection when plaintiff's attorney asked if the evaluation was actually conducted as being out of scope of the cross-examination.

[6] <u>Brandon v. Holt</u>, 469 U.S. 464 (1985); <u>Gutiérrez-Rodríguez v. Cartagena</u>, 882 F.2d 553 (1st Cir. 1989); <u>Leyva v. Aristud</u>, 132 D.P.R. 489 (1993).

CIVIL 07-1757 (JA)                              10

with what the 16 referred to and noted that the 527 was the sequence in a book that the secretaries must keep of every document that they write. Also, she was not familiar with the codes of the Superintendent's Office. According to the sergeant, the OS acronym could mean that the document came either from the Superintendent's Office or the legal office since both offices use this notation.

Sergeant Lugo-Beauchamp identified Exhibit 8, the relevant part of which was shown to the jury. Exhibit 8 is GENERAL ORDER NO. 98-6, directed to all personnel, and titled USE AND HANDLING OF THE NIGHTSTICK (BILLYCLUB). It reads at the middle of page 4: "Areas of the body to avoid hitting with the nightstick because they are points of fatal impact. Those are numbered as: (1) Shoulders up (any areas of the skull), (2) Genital area, (3) Spinal area, and (4) Celiac plexus or solar plexus (abdominal, sternum and cardiac trauma)." It outlines which areas are to be avoided when striking a suspect, in a diagram showing the areas on the body to be avoided, which are again, the area from the shoulders up and any area of the skull, the solar plexus area, the spinal area and the genitals. (Exhibit 8, at 6.)

On cross-examination, sergeant Lugo-Beauchamp testified that she knew Pedro Toledo-Dávila but was not familiar with the facts of the case, and had no personal knowledge of the case. She related that she is not an investigator, that her duties are in an office and not on the street. However, sergeant Lugo-

CIVIL 07-1757 (JA)                              11

Beauchamp stated that sometimes she gets a street assignment for a short period of time.  During her testimony, she related that she had no involvement with the preparation of Exhibit 7, that she never received the document and that attorney Catala-Barrera never supervised her.  She explained that he worked in the legal department and that there are three files, one located in human resources, one which is in personnel and an administrative file.  She also noted that Pedro Toledo-Dávila's name is not on the document, that the OS reflects that it came from either the legal office or the Superintendent's Office and that maybe he never saw it.

Sergeant Lugo-Beauchamp also noted that Exhibit 6 dated November 12, 2008, was prepared either by her or reservist Domingo Lebrón-Rodríguez, a former police captain now retired, who worked under her supervision.  Sergeant Lugo-Beauchamp related that she would assign the work and the reservists would prepare the history on a computer.  Thus, the information on the document may have changed by now.  The sergeant stated that she was not aware if any complaint had been dismissed.  For example, the fourth item of Exhibit 6 has no final disposition and does not show if the member is still in the police department. Nor does the document show if more complaints were filed against the officer.

The defendant Pedro Toledo-Dávila argues that he can only be held liable for his personal actions under the theory of supervisory liability and that he cannot

CIVIL 07-1757 (JA)                          12

be held liable for merely negligent acts.  He notes that the record reflects that he had no involvement in the records produced as exhibits and that there is no fact as to any act or omission on his part which would expose him to supervisory liability.  Because of the lack of such evidence, the complaint should arguably be dismissed, particularly since there is no witness showing any affirmative link between any act or omission on his part and the civil rights violation.

Plaintiff argues, contrariwise, that there exists a known history of widespread abuse and that the records reflect five violations, in 1996 (verbal abuse), 1998 (verbal abuse), 1999 (domestic abuse), 2000 (verbal abuse to fellow officer) and 2001 (insubordination).  Plaintiff argues that it was clear that officer Lara-Ramos could potentially commit civil rights violations.  According to plaintiff, the complaints reflect deliberate indifference on the part of the defendant Pedro Toledo-Dávila.

To demonstrate "deliberate indifference" a plaintiff must show causation by establishing (A) a grave risk of harm, (B) the defendant's knowledge, actual or constructive, of that risk, and (C) his failure to take easily available measures to address the risk.  Camilo-Robles v. Hoyos, 151 F.3d at 7; see Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992).  In other words, "[a]bsent [direct] participation in the challenged conduct, a supervisor 'can be held liable . . . [only] if (1) the behavior of [his] subordinates results in a constitutional violation and (2)

CIVIL 07-1757 (JA)                          13

the [supervisor's] action or inaction was 'affirmatively link[ed]' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence . . . amounting to deliberate indifference.'" Hegarty v. Somerset County, 53 F.3d at 1379-80 (quoting Lipsett v. U.P.R., 864 F.2d 881, 902-03 (1st Cir. 1988))[7]; see Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005); see also Maldonado v. Fontanés, 568 F.3d 263, 275 (1st Cir. 2009).

Plaintiff has failed to establish any degree of causation to determine that defendant Toledo-Dávila's acts or omissions lead to the violation of plaintiff's civil rights. No evidence supports the claim that Pedro Toledo-Dávila acted in a manner that was deliberate, reckless, or callously indifferent to the plaintiff's rights. Also, plaintiff has not offered any evidence that Pedro Toledo-Dávila actually knew or reasonably could have foreseen that officer Miguel Lara-Ramos would use excessive force during the arrest of a suspect who had been drinking, particularly since all of his prior complaints, regardless of outcome, had to do with verbal abuse or verbal exchanges. The notice of possible civil rights violations is not present. Nor is the actual or constructive knowledge of the superintendent present as such knowledge relates to the efficacy of remedial measures as directed by the legal department. While the evidence of the actual results of the referral of officer

---

[7] Cited in Vargas-Torres v. Toledo-Dávila, No. 07-2002, 2008 WL 1984057 (2008), referred to by defendant during the argument on the Rule 50 motion.

CIVIL 07-1757 (JA)                                    14

Lara-Ramos for medical evaluation was excluded, that such evaluation was not actually conducted would have had the same probative weight as evidence that the evaluation was actually conducted and some further action or no further action ensued.  The results are not of consequence considering the tenuous connection or link between the actual violation and the foreseeability of such a violation by the superintendent.

## IV.  CONCLUSION

Absent such evidence, the motion for judgment as a matter of law must be granted since the plaintiff has been fully heard on the merits of his case and a jury would be left to reach but one conclusion, that there was no affirmative link between any action or omission on the part of Pedro Toledo-Dávila and the violation of plaintiff's rights.  Again "[t]he affirmative link requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset County, 53 F.3d at 1380, cited in González-Pérez v. Dávila, 680 F. Supp. 2d 347, 355 (D.P.R. 2009).  The evidence presented leads the jury to speculate or guess as to Pedro Toledo-Dávila's knowledge of officer Miguel Lara-Ramos' verbal abuse and domestic violence history and subsequent remedial action or inaction on the part of the Puerto Rico Police Department of which Pedro Toledo-Dávila was superintendent.  The affirmative link to the violation of plaintiff's civil rights is thus missing.

CIVIL 07-1757 (JA)                                        15

In view of the above, the motion for judgment as a matter of law by former superintendent Pedro Toledo-Dávila is hereby GRANTED.  The Clerk is directed to enter judgment dismissing the complaint in its entirety.

In San Juan, Puerto Rico, this 4th day of May, 2010.

                                        S/ JUSTO ARENAS
                                Chief United States Magistrate Judge